IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TYNIKA HAMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:19-cv-02868-TLP |
| v. ) | |
| ) | JURY DEMAND |
| STATE OF TENNESSEE, Department of ) | |
| Children's Services, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, Tynika Hamer, sues Defendant, the Tennessee Department of Children's Services ("DCS"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17, claiming sexual harassment, retaliation, and sex discrimination. (ECF No. 1.) After Defendant moved to dismiss all of Plaintiff's claims (ECF No. 10), Plaintiff amended the complaint (ECF No. 18). That complaint is now the operative pleading, and the parties stipulated that the amended complaint mooted the previous motion to dismiss. (ECF No. 19.)

But Defendant now moves the Court to dismiss only Plaintiff's Title VII sex discrimination claim. (ECF No. 21.) Plaintiff responded in opposition (ECF No. 23), and Defendant replied[1] (ECF No. 25). For the reasons below, the Court **DENIES** Defendant's motion to dismiss Plaintiff's sex discrimination claim.

---

[1] Defendant's reply was due Monday, July 6, 2020. *See* W.D. Tenn. L.R. 12.1(c) ("Replies must be filed within 14 days after the response was served."). Defendant responded a day late. (ECF No. 25.) Although this reply is untimely, the Court will consider it because it merely clarifies its original motion to dismiss and does not add new arguments or analysis. (*See id.*)

**BACKGROUND**

Plaintiff, a female, began working for Defendant as a DCS officer in June 2018. (ECF No. 18 at PageID 44.) Plaintiff worked at the Wilder Youth Development Center in Somerville, Tennessee. (*Id.*) Her job responsibilities included "supervising youths, searching their rooms, maintaining control, writing reports, de-escalating problems and other related duties." (*Id.*)

**I.     Sexual Harassment by Lt. Jackson**

A few months into her employment, Plaintiff began experiencing issues with her supervisor, Lieutenant Gregory Jackson. (*Id.*) Plaintiff alleges that Lt. Jackson verbally harassed her at first, making coarse and degrading comments that were both unwelcome and sexual. (*Id.*) For instance, Plaintiff claims that Lt. Jackson commented on a particular part of her anatomy in the cafeteria in front of at least one witness, which embarrassed her. (*Id.* at PageID 44–45.) And on another occasion, Lt. Jackson allegedly implied that he knew where she lived, although he had no reason to know this information. (*Id.* at PageID 47.) Plaintiff alleges that these comments scared and intimidated her. (*Id.*) Plaintiff brushed these comments off and avoided Lt. Jackson to the best of her ability. (*Id.* at PageID 44.) And when that did not work, Plaintiff reported the verbal sexual harassment to an unidentified manager. (*Id.*)

But it soon turned physical. Plaintiff alleges that, one time, Lt. Jackson approached her in the records room, asked her for a hug, and then grabbed her and made moaning sounds. (*Id.*) Plaintiff also alleges that Lt. Jackson would also corner her in "blind spots"—areas not covered by the security cameras—and would make lewd comments to her. (*Id.* at PageID 45.) And soon Lt. Jackson grabbed Plaintiff between her legs, apparently "probing for her private parts." (*Id.* at PageID 46.) Plaintiff claims that this was unexpected, uninvited, and shocking, so she physically pushed him away. (*Id.*) In response, Lt. Jackson purportedly laughed at her. (*Id.*)

That was allegedly Plaintiff's breaking point. She reported the incident to Tanisha Jones, who held a management position. (*Id.* at PageID 47–47) Jones took Plaintiff's statement and began to investigate Lt. Jackson's actions. (*Id.* at PageID 47, 49.) Plaintiff, "profoundly upset," contemplated resigning to avoid Lt. Jackson. (*Id.* at PageID 46–47.)

Plaintiff soon missed work. Plaintiff's explanation for missing work, however, is inconsistent. On the one hand, she claims that she was taken off work because of the sexual harassment and assault by Lt. Jackson, but she also claims that she missed work because she became ill with the flu. (*Id* at Page ID 47.) Because the Court takes the allegations in the light most favorable to the plaintiff under Rule 12(b)(6) and accepts them as true, *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), the Court will assume that both of Plaintiff's given reasons contributed to her missing work.

While Plaintiff was on sick leave, Lt. Jackson called Plaintiff's personal cell phone. (ECF No. 18 at PageID 47) Plaintiff had never given Lt. Jackson her personal phone number and was frightened, so she hung up. (*Id.*) Plaintiff, however, does not reveal whether she reported this incident to Jones or any other management-level employee. (*See id.*) The day Plaintiff returned to work Lt. Jackson disciplined her. (*Id.*) He implied that she intentionally missed work and then issued her a written warning. (*Id.*)

At some time after these incidents, Lt. Jackson left DCS. (*Id.*) But Plaintiff, again, provides conflicting accounts of Lt. Jackson's separation from DCS. At one point, Plaintiff alleges that Lt. Jackson was terminated (*id.* at PageID 48), and, at another, she alleges that DCS allowed him to resign voluntarily (*id.* at PageID 49).

Plaintiff alleges that she has since learned Lt. Jackson sexually harassed several other female employees. (*Id.* at PageID 49.)

## II. Harassment by Other Coworkers

After Plaintiff made her first complaint about Lt. Jackson, she alleges that Lt. Jackson's friends began causing problems and retaliating against her, which subjected her to a hostile work environment. (ECF No. 18 at PageID 45, 47–48.) Plaintiff provides two examples of the alleged hostile work environment. First, she alleges that Sheila Douglas, a close friend of Lt. Douglas', intimidated Plaintiff by telling her that she "needed to watch where she was going" and called Plaintiff "a little ass girl." (*Id.* at PageID 48.) Upon investigation, Douglas admitted to making those statements, but claimed that she meant no harm and speaks to everyone that way. (*Id.*) But Plaintiff claims this is manifestly untrue. Second, Plaintiff claims that Lt. Jackson's wife acted aggressively toward Plaintiff in the Wilder Youth Development Center parking lot. (*Id.* at PageID 45–46.)

And Plaintiff claims that even members of management retaliated against her. Plaintiff's managers allegedly involuntarily reassigned her, "inexplicably changed" her work hours, and placed her on isolated assignments where she feared physical assault by Lt. Jackson and his friends. (*Id.* at PageID 47.) According to Plaintiff, the Superintendent then barred her from attending monthly mandatory staff meetings. (*Id.* at PageID 48–49.)

The Superintendent also allegedly made empty promises that she would correct Lt. Jackson's behavior and investigate Plaintiff's allegations. (*Id.* at PageID 47–48.) But the Superintendent never followed through or investigated any alleged harassment or retaliation. (*Id.*)

According to Plaintiff, this harassment accelerated after she filed an EEOC charge. (*Id.*) Given these instances, Plaintiff felt like management and other employees were conspiring to

4

cover up her allegations and retaliate against her for complaining about Lt. Jackson's harassment.  (*Id.* at PageID 49.)

### III. Plaintiff's Termination

In May 2019, DCS discharged Plaintiff for trying to kick a child in violation of Department policy.  (*Id.*)  Plaintiff contends that this reason is pretextual.  (*Id.*)  In support of this contention, Plaintiff argues that the child she allegedly sought to kick made a statement that Plaintiff did not try to kick him.  (*Id.*)  According to Plaintiff, DCS fired her in retaliation for her complaints of harassment in violation of Title VII.  (*Id.*)

So Plaintiff sued Defendant under Title VII of the Civil Rights Act of 1964 claiming sexual harassment, retaliation, and sex discrimination (ECF No. 1), and later amended the complaint (ECF No. 18.)  Defendant now moves to dismiss only Plaintiff's sex discrimination claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (ECF No. 21.)  Plaintiff responded in opposition, (ECF No. 23), and Defendant replied (ECF No. 25.)

The Court will now address the merits of the arguments.

## LEGAL STANDARD

The Court begins its analysis by looking at the rules governing motions to dismiss.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether Plaintiff's allegations state a claim for relief.  Under Rule 12(b)(6), the Court has to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *DIRECTV*, 487 F.3d at 476.

That said, a court may reject legal conclusions or unwarranted factual inferences. *Hananiya v. City of Memphis*, 252 F. Supp. 2d 607, 610 (W.D. Tenn. 2003) (citing *Lewis v.*

*ACB Business Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998)).  The Sixth Circuit has noted "[a] complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).  "Dismissal of the action is proper if there is an absence of law to support the type of claim made, if the facts alleged are insufficient to state a valid claim, or if, on the face of the complaint, there is an insurmountable bar to relief."  *Doe v. Ohio*, No. 2:91-CV-464, 2012 WL 12985973, at *5 (S.D. Ohio Feb. 16, 2012) (citations omitted).

Ordinarily, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  But the Supreme Court's decision in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002), makes clear that employment discrimination plaintiffs need not plead specific facts establishing the elements of a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In so holding, the Supreme Court emphasized that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement, 'and the McDonnell Douglas framework is inapplicable where a plaintiff has direct evidence of discrimination." *Swierkiewicz*, 534 U.S. 501, 511.  Therefore, all that is required is that Plaintiff's complaint comply with "Rule 8(a)'s simplified pleading standard." *Id.* at 513.  The Court should also consider the allegations in Plaintiff's complaint under Federal Rule of Civil Procedure 8.

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard does not

6

require "detailed factual allegations," but it does require more than "labels and conclusions" or "a mere formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012).

To survive a motion to dismiss, Plaintiff must allege enough facts "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## **ANALYSIS**

Defendant argues that Plaintiff has failed to state adequately a sex discrimination claim because she fails to state any facts plausibly showing that her termination was based on sex. (ECF No. 21-1 at PageID 64.) In support, Defendant points out that Plaintiff's complaint lacks facts supporting her allegations that Defendant terminated her as a pretext for discrimination. Besides argues Defendant, she fails to allege any facts establishing that the referenced "similarly-situated employees" qualified for that designation or that they were males. (*Id.*) In response,[2] Plaintiff appears to argue that her claim of sex discrimination is bound with her claims of hostile work environment sexual harassment and retaliation under Title VII. (*See* ECF No. 23-1.)

---

[2] Plaintiff's response bounces back and forth among her three claims and is somewhat difficult to follow. (*See* ECF No. 23-1.) It appears, however, that Plaintiff spends most of her response addressing the plausibility of her sexual harassment and retaliation claims. (*See id.* at PageID 71–79.) But, as clarified in its reply, Defendant seeks only to dismiss Plaintiff's sex discrimination claim. (ECF No. 25.) The Court, therefore, only addresses the parties' arguments about Plaintiff's claim of sex discrimination.

7

Title VII makes it unlawful for an employer "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). At the outset, Defendant argues that Plaintiff cannot maintain her sex discrimination claim along with her sexual harassment and retaliation claims because she fails to set forth separate allegations about her sex discrimination claim. (ECF No. 23-1 at PageID 62.)

But the Court reads the amended complaint more broadly, taking all allegations in the amended complaint in a light most favorable to Plaintiff. *DIRECTV*, 487 F.3d at 476. Plaintiff's amended complaint here alleges that she suffered sexual harassment at the hands of Lt. Jackson. (ECF No. 18 at PageID 44–48.) And that he harassed her based on her sex. (*Id.*) What is more, after she engaged in the protected activity of reporting Lt. Jackson, Plaintiff alleges that his cohorts subjected her to a hostile work environment in retaliation for her complaints. (*Id.* at PageID 46–49) And then, according to Plaintiff, Defendant terminated her employment to conclude this harassment and retaliation. (*Id.* at PageID 49–50.) That termination is allegedly a pretext for retaliation tied to Plaintiff's harassment based on her sex. (*Id.*)

While Plaintiff's theory is somewhat tenuous, for the reasons explained below, the Court finds dismissal for failure to state a claim inappropriate. Of course, "[a] plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *See Larocque v. City of Eastpointe*, 245 F. App'x 531, 535 (6th Cir. 2007) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986) (holding that a claim of hostile environment sexual harassment is a form of sex discrimination under Title

VII)).  In taking the amended complaint's allegations in a light most favorable to Plaintiff, her hostile work environment sexual harassment and retaliation claims cross the line to sex discrimination when Defendants took an adverse employment action against her.  According to Plaintiff, those adverse employment actions include involuntary reassignment, changed work hours, placement on isolated incidents, banishment from mandatory monthly staff meetings, and, ultimately, termination.  (ECF No. 18 at PageID 48–49.)

And while Defendant rightly points out that all of Plaintiff's claims—sexual harassment, retaliation, and sex discrimination—have different burdens to make prima facie cases, Plaintiff need not meet her prima facie case at the pleading stage.  *Swierkiewicz*, 534 U.S. at 508.  The Court next turns to Plaintiff's specific allegations of sex discrimination here.

To make a claim of sex discrimination, Plaintiff must show:  (1) that she is a member of a protected group; (2) she faced an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably.  *Webb v. Shelby County Schs.*, No. 16-cv-2033-JPM-dkv, 2017 WL 685777, at *4 (W.D. Tenn. Jan. 31, 2017) (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004), report and recommendation adopted, 2017 WL685581 (W.D. Tenn. Feb. 21, 2017)).  Accepting all allegations in the complaint as true and broadly reading the complaint, the Court finds that Plaintiff meets her burden of pleading a sex discrimination claim under Title VII.

First, Plaintiff easily meets the requirements of the first prong of a sex discrimination claim.  Plaintiff is a female and thus is a member of a protected class.  (ECF No. 18 at PageID 43.)

Plaintiff also easily meets the adverse employment action requirement.  An adverse employment action is "a materially adverse change in the terms and conditions of [a plaintiff's]

employment" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Redlin v. Gross Pointe Pub. Sch. Sys.*, 921 F.3d 599, 607 (6th Cir. 2019) (first quoting *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010); then quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008)).  Here Plaintiff alleges that Defendant terminated her.  (ECF No. 18 at PageID 49.)  This is an adverse employment action supporting her claim for sex discrimination.  What is more, Plaintiff alleges other actions of her coworkers and management rise to the level of an adverse employment action—involuntary reassignment, changed work hours, placement on isolated incidents, banishment from mandatory monthly staff meetings.  (*Id.* at PageID 48–49.)

Next, although Plaintiff does not allege that she was qualified for the position, she need not meet her prima facie burden at this point.  *Swierkiewicz*, 534 U.S. 501, 511.

Finally, Plaintiff alleges that other employees committed terminable offenses but were not terminated.  (*Id.*)  Plus Plaintiff alleges that the basis for her termination was inaccurate and pretextual because the youth she allegedly tried to kick made a statement that this incident did not occur.  (*Id.*)  Although these allegations do not meet Plaintiff's prima facie case of sex discrimination, the Court finds that they, along with the allegations in the rest of the amended complaint, satisfy the simplified pleading standards of Federal Rule of Civil Procedure 8(a).  *See Swierkiewicz*, 534 U.S. 501, 511 (holding that a plaintiff need not meet her burden of establishing a prima facie case at the motion to dismiss phase).

Although Plaintiff's amended complaint does not include detailed factual allegations about her sex discrimination claim in particular, she does plead a short and plain statement of her claim showing that she is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Viewing the amended

complaint in the light most favorable to Plaintiff, this Court finds that Plaintiff meets Rule 8's simplified pleading standard and that her sex discrimination claim should proceed.

## **CONCLUSION**

For all these reasons, the Court **DENIES** Defendant's motion to dismiss Plaintiff's sex discrimination claim.

**SO ORDERED**, this 7th day of August, 2020.

                                     s/Thomas L. Parker
                                     THOMAS L. PARKER
                                     UNITED STATES DISTRICT JUDGE